850 P.2d 1038

**Guadalupe P. COX, Claimant–Appellant,**

**v.**

**CHINO MINES/PHELPS DODGE, Respondent–Appellee.**

**No. 13470.**

Court of Appeals of New Mexico.

March 16, 1993.

Anthony F. Avallone, Thomas R. Figart, Law Systems of Las Cruces, P.A., Las Cruces, for claimant-appellant.

James C. Ritchie, Edward Ricco, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for respondent-appellee.

## OPINION

FLORES, Judge.

Claimant appeals from a judgment entered by the Workers' Compensation Judge (WCJ) denying her compensation benefits and dismissing her claim with prejudice. Claimant raises several issues on appeal; however, Employer contests only the issue of whether Claimant sustained an injury "arising out of" her employment as a result of incidents of sexual harassment occurring in the workplace. Accordingly, we address only this issue and affirm.

**FACTS**

Claimant was hired by Employer in 1979. Claimant complained of several instances of sexual harassment toward her by two fellow employees and one supervisor occurring at the workplace in the period between October 1988 and October 1990. In turn, the WCJ found three instances of sexual harassment occurring in October and December of 1988 and in June of 1989.

Regarding the October and December 1988 incidents, Claimant was accosted on the job by co-worker Patrick Feeley (Feeley), who attempted to hug and kiss her and stated that he wanted to take her to bed. Claimant resisted Feeley's advances and reported both incidents to her immediate foreman. Feeley was confronted by his supervisor after the December 1988 incident and was threatened with discharge if he continued to violate company policy. Such incidents did not reoccur.

Regarding the June 1989 incident, Claimant was at the workplace together with several other co-employees when a fellow employee commented on whether another employee had "got [sic] his job because he sucked cock." Claimant reported this incident to a co-employee at the Industrial Relations Office.

On August 14, 1989, Claimant saw Dr. Campbell, a psychiatrist. At that time she complained of anxiety, gastric pain, depression, sleeplessness, lack of energy, crying spells, and feelings of despair, all due to the incidents of sexual harassment at the workplace. Dr. Campbell continued to treat Claimant and eventually recommended that she take time off work. Claimant was off work from June 20 to July 30, 1990. On August 14, 1990, Claimant filed a claim alleging psychological and physical injuries, as a result of sexual harassment on the job. She sought disability and medical benefits. Claimant was again off work from October 16, 1990, to March 1, 1991. At the time of the hearing on July 1, 1991, Claimant was still working with Employer basically performing the same job duties she was performing in December 1988 and June 1989.

During all material times Employer had a written policy, known to all employees, prohibiting sexual harassment in the workplace. The policy, in pertinent part, provided as follows:

> that all employees should work in an environment free of sexual harassment. ... [S]exually harassing conduct in the work place, whether physical or verbal, committed by supervisors or non-supervisory personnel is ... prohibited and will not be tolerated. This includes, but is not limited to, offensive flirtation, advances, propositions, ... sexually degrading words to describe an individual ..., [or] telling of offensive jokes.

In dismissing Claimant's action, the WCJ concluded that (1) Claimant did not sustain an accident "arising out of" her employment with Employer; and (2) sexual harassment was not a practice permitted at Employer's workplace and went against the customs of the employment environ-

ment. Accordingly, the workers' compensation claim was dismissed. It is from this dismissal of her claim that Claimant appeals.

## DISCUSSION

In order to be entitled to compensation under the Workers' Compensation Act, a claimant must have suffered an injury "arising out of" the claimant's employment. NMSA 1978, § 52–1–28(A) (Repl. Pamp.1987); *Montoya v. Leavell–Brennand Constr. Co.*, 81 N.M. 616, 471 P.2d 186 (Ct.App.1970). To establish that an injury arises out of employment, "it is not sufficient that the injury occurs at work; the disability must have resulted from a 'risk incident to [the] work itself' or 'increased by the circumstances of the employment.'" *Candelaria v. General Elec. Co.*, 105 N.M. 167, 173, 730 P.2d 470, 476 (Ct.App.), *cert. quashed*, 105 N.M. 111, 729 P.2d 1365 (1986) (quoting *Kern v. Ideal Basic Indus.*, 101 N.M. 801, 802, 689 P.2d 1272, 1273 (Ct.App.), *cert. denied*, 102 N.M. 7, 690 P.2d 450 (1984)); *see also City of Richmond v. Braxton*, 230 Va. 161, 335 S.E.2d 259, 261–62 (1985) (for a claimant's injury to arise out of his or her employment, "[i]t is not sufficient to find that the employment is what brought the parties into close proximity[;] ... there must be a causal connection between the conditions under which the work is required to be performed and the resulting injury").

The question of whether a claimant's injury arises out of his or her employment is a question to be determined by the trier of fact. *See Gutierrez v. Artesia Pub. Schools*, 92 N.M. 112, 115, 583 P.2d 476, 479 (Ct.App.1978) (quoting *In re McNicol*, 215 Mass. 497, 102 N.E. 697 (1913)). However, where the historical facts of the case are undisputed, as in this case, the question of whether the accident arose out of the employment is a question of law. *Edens v. New Mexico Health & Social Servs. Dep't*, 89 N.M. 60, 62, 547 P.2d 65, 67 (1976). Here, Employer concedes that Claimant sustained an injury caused by three instances of sexual harassment found by the WCJ to have occurred in the workplace. Whether the facts found by the WCJ establish an injury "arising out of" Claimant's employment is therefore a question of law. *See id.*

Claimant, citing *Board of Education v. Jennings*, 98 N.M. 602, 651 P.2d 1037 (Ct. App.1982), argues that an injury on the job as a result of the unsatisfactory work performance of a co-employee is a risk inherent in an employment context. We further understand Claimant to be arguing that Employer's written policy prohibiting sexual harassment established a condition of employment whereby employees must forbear committing acts of sexual harassment on the job as a condition of employment. She therefore submits that one who is injured by a violation of that condition has been injured by an incident related to employment. We disagree for two reasons. First, such an analysis is inconsistent with our recently decided case of *Woods v. Asplundh Tree Expert Co.*, 114 N.M. 162, 836 P.2d 81 (Ct.App.), *cert. denied*, 113 N.M. 744, 832 P.2d 1223 (1992). Second, such an analysis ignores the applicable law on the "arising out of" requirement.

Both Claimant and Employer cite out-of-state cases to support their positions that Claimant's injury either did or did not arise out of her employment. We need not list all of the cases and their holdings here. Most of them are collected in Eliot J. Katz, Annotation, *Workers' Compensation: Sexual Assaults as Compensable*, 52 A.L.R. 4th 731 (1987). We reject the cases cited by Claimant as poorly reasoned or inconsistent with established New Mexico law on the "arising out of" requirement. *E.g., Lui v. Intercontinental Hotels Corp. (Hawaii)*, 634 F.Supp. 684 (D.Haw.1986); *Brown v. Alos Micrographics Corp.*, 150 A.D.2d 888, 540 N.Y.S.2d 911 (1989).

We find Employer's cited cases to be more in line with New Mexico law. However, while some of its cases contain persuasive language that appears to be consistent with our own cases' interpretation of the "arising out of" requirement, we question whether those cases' application of that language is consistent with what we would do. *E.g., City of Richmond v. Braxton.* Thus, our citation of these cases

does not mean that we approve of them in their entirety.

Nonetheless, it appears to us that much of the language of *Murphy v. ARA Services, Inc.*, 164 Ga.App. 859, 298 S.E.2d 528 (1982), *cert. denied* (1983), and *Carr v. U S West Direct Co.*, 98 Or.App. 30, 779 P.2d 154, *review denied*, 308 Or. 608, 784 P.2d 1101 (1989), is instructive in determining whether an episode of sexual harassment arises out of the employment. In particular, *Murphy* states that the fact that the employment caused the claimant to be exposed to the assailant is not dispositive. *Murphy*, 298 S.E.2d at 531. *Carr* states that there must be some evidence about the nature of the job or job environment that created or enhanced the risk of assault. *Carr*, 779 P.2d at 156–57. Also, in *Arnold v. State*, 94 N.M. 278, 609 P.2d 725 (Ct. App.), *cert. denied*, 94 N.M. 674, 615 P.2d 991 (1980), we upheld, as arising out of the employment, an assault and rape by a mentally retarded student who lived at the state facility at which the claimant was living when the assault and rape occurred because the claimant was living in housing provided by the employer on the premises.

The out-of-state cases are also consistent with our own case of *Woods*, in which we outlined the rules about injuries caused by horseplay. Under the New York rule, a worker could recover for injuries caused by horseplay if horseplay was a regular incident of employment. Under the course of employment test, a worker could recover as long as the horseplay was not a substantial deviation from employment, which the judge would find after considering the extent of the deviation, the completeness of the deviation, the extent to which horseplay was an accepted part of the employment, and the extent to which the nature of the employment may include some horseplay.

Here, the incidents involving Claimant were isolated and were not part of the conditions of employment. While we do not believe that the rules concerning horseplay should be superimposed onto sexual harassment situations, we note that under either of the *Woods* rules, Claimant's claim fails because sexual harassment was not a regular incident of the employment and Employer had specific policies in place prohibiting sexual harassment. In this regard, Feeley, the employee who accosted Claimant, was warned to stop his conduct or he would be discharged. Thereafter, the sexual harassment incidents stopped. Thus, sexual harassment was not a peculiar risk at this workplace. In fact, Claimant admits in her testimony that she had experienced no incidents of sexual harassment in approximately nine years of previous employment with Employer and that she was unaware of any other female employee who had previously been sexually harassed at this workplace.

By virtue of the Employer's written policy on sexual harassment and its action in reprimanding its employee, Feeley, it is clear that Employer neither authorized nor tolerated the sexual harassment incidents. Thus, although Claimant's injury may have been causally related to her employment, we hold that on the facts in this case, the WCJ properly concluded, as a matter of law, that Claimant did not sustain an accident arising out of her employment.

■ Lastly, Claimant argues that her injury stemming from sexual harassment on the job should be compensable under New Mexico workers' compensation law as a matter of public policy. She contends that, as a matter of public policy, both New Mexico and federal laws, through the New Mexico Human Rights Act, NMSA 1978, §§ 28-1-1 to -7, 28-1-9 to -14 (Repl.Pamp.1991) and the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 (1988), respectively, provide remedies for sexual harassment in the workplace. She further argues that providing similar remedies under the New Mexico Workers' Compensation Act would be consistent with such public policies. We are not convinced that Claimant is correct. We are more persuaded by Employer's arguments that the concerns addressed by these statutes are quite different from those addressed by the workers' compensation laws and that the way to maintain public policies against sexual harassment on the job is to pursue the common-law or statutory remedies avail-

able to promote these policies and not to engraft those policies on to a very different legislative scheme such as the Workers' Compensation Act.

Based on the foregoing, we affirm the WCJ's judgment.

**IT IS SO ORDERED.**

CHAVEZ and PICKARD, JJ., concur.